Good morning, Your Honors. May it please the Court, Jagdeep Sikhal on behalf of the petitioner Jaspreet Singh. Your Honors, the issue presented by the petitioner's case is whether, after his testimony was found to be credible by the Board of Immigration Appeals, he was required to submit further independent corroboration to establish his eligibility for relief. The precedent of this Court categorically says he did not have to present any further evidence. And an examination of the record reveals the soundness and the sensibility of this Court's policy. When the IAJ reviewed the case, she found that Mr. Singh was not credible. But then the IAJ did what she should have done at that time, and she proceeded to address that corroboration. When she addressed the corroboration, she didn't doubt the credibility of it. She, in fact, found it, quote-unquote, I believe, helpful, but explained that because she wasn't finding him credible, she was not going to find that the corroboration filled all the gaps. Counsel, this is Judge Hawkins. I'm on the phone. If you could keep that microphone right in front of you, I'll hear all of your arguments. I'm sorry, Your Honor, I didn't understand you. Keep your mouth as close to the mic as possible. Okay. Thank you. Thank you. So when the Board of Immigration and Appeals got the case, they reversed the IAJ's adverse credibility finding and then request more corroboration. And that leaves Mr. Singh in a dilemma because, first of all, he provided credible testimony. He provided credible corroboration. So it's unclear what the BIA felt was deficient, what more they wanted, and why they wanted it. There's just a vague reference to BIA precedent that requires additional corroboration, but there's no explanation of what issues they wanted specifically addressed and what evidence they believed he did not provide. Now, the BIA said that the testimony about the cousin's involvement with militants was vague. But then he didn't, BIA didn't go on to say that there was any lack of credibility or that the testimony about his beatings and so forth were vague. So I guess we accept that he was badly beaten and detained one time, 15 days. Is that your view of the case? Yes, Your Honor. And also, with respect to the issue of whether his cousin was a militant or was connected with militants, it really doesn't matter as long as the government imputed the opinion that they felt that Mr. Singh was a militant, the petitioner was a militant. So that is clear that the government did that. So, again, that goes back to it's not clear why the Board of Immigration Appeals wanted additional corroboration. And on that issue, we, of course, don't agree that Mr. Singh's testimony on the question was vague. Let me ask this. Exactly what treatment that he was given would entitle him to relief under the Convention Against Torture?  I think, Your Honor, that in COOP, K-H-U-P, this Court determined that physical beatings are torture. And prior to the Convention Against Torture, I also believe in Ratnam, R-A-T-N-A-M, this Court also found that beatings are torture. We have here beatings, the stretching of the legs, and we would contend that that qualifies as torture. And finally, Your Honors, I would like to add one more point here that is problematic when the IAJ says, I'm denying you because of your testimony, but I find your corroboration helpful, and then the VA turns the tables on you, and you're left at the appellate level of trying to provide, of not really having an opportunity of being told what corroboration you need. And without being put on notice of it. Well, what the BIA said is that they found the Responder provided vague and evasive testimonies of Porter's application. Two of those elements were he wasn't quite sure whether the cousin he was helping was really a cousin because he wasn't quite sure whether his father was a brother who was the father of the cousin. So whether he was a cousin or not was kind of left up in the air. And also the cousin seemed to be a contractor for the Indian Defense Ministry and was favored with contracts. So how would he, why would he be persecuted? Well, Your Honor, when I looked at the record, and it's, they, about those places in the transcript, I didn't find that, I think those issues were brought up more with respect to the petitioner's credibility, and those issues were reversed by the Board. But I don't think it's inconsistent for someone to have a government job and then hold an opinion against the government. It happens all the time. In this context, now we're speculating because of... All right, that's your answer. What you're saying is that he was held for 15 days and beaten, and that shows persecution for political opinion imputed to him, and that creates a presumption that he will be similarly treated if he goes back. Yes, Your Honor, and with respect to what Your Honor is talking about, the transcript at 31 to 40, the issues that I found were discussed, and that's what the BIA cited, transcript 31 to 40. The petitioner identified his cousin as an AISS member. He said that he was sheltering militants. He clarified the dates, and he clarified when he last met him. There wasn't much discussion about an inconsistency with respect to his government work and his political opinion. Thank you very much. You have two minutes left. May it please the Court. John Uchai on behalf of the United States Attorney General. Your Honors, Mr. Singh has not demonstrated that the record compels the finding that the immigration judge and the BIA were wrong to find that his testimony was vague and evasive, and therefore insufficient to support his burden of proof in this case. Am I correct that the BIA commented on the cousin and his relationship and what he was, but didn't find the testimony about the beating and the incarceration for 15 days to be vague? Is that correct? Well, Your Honor, that is true. The BIA did not specifically state anything with respect to his incarceration and beatings. There are actually three distinct grounds that they mentioned, and they seem to limit it to that. The first of which is whether or not his cousin was a militant or not. And to be clear, the Board, of course, did not find that there was ample support for the IJ's credibility determination. But one level below that, they found that, nevertheless, the testimony, the evidence given, wasn't clear enough to support his burden of proof. And, again, there were three specific reasons. Well, why is that relevant, really, if they thought the cousin was militant or they thought the petitioner was militant? Isn't that enough? Well, the finding was, Your Honor, that they weren't exactly sure if he was or if he wasn't. So I don't think there is a clear finding that he was a militant in the case, and I think that's the whole problem with the testimony. But why does it matter, really, what the cousin was? Well, it goes to show, first of all, if he is a militant, it would tend to bolster the claim of the fact that the police were after him. But, of course, that is undercut, and this is something that they allude to in terms of the ambiguity or the vagueness or the lack of clarity with the testimony. He also, the petitioner also states, Mr. Singh, that the government wouldn't award contracts to militants. So on one end he says he may be a militant. Then he says, well, the government wouldn't award contracts to militants, which, of course, his cousin received contracts for. Then he said there was no rumors in the community of his cousin being a militant. And then, of course, the issue of his friend's affidavit came up, and he was confronted with the fact that, according to the affidavit, the affiant says, which is a friend of Mr. Singh, that Mr. Singh told me that his cousin was related or connected to militant activities. But why would the government pick him up if they didn't have some sense that he was helping the militants? And their evidence was that he was harboring his cousin and helping him get away. Well, that would be the speculation, Your Honor, but we don't know exactly. Well, who's speculating? Well, that's the problem with the testimony. What the board, I think, held is that they can't say for sure if he was or wasn't militant or if that's why they picked, though they were after his cousin, and picked up Mr. Singh. I think that's what it gets to is the sufficiency of his testimony. And it's not just that. They also cite two other issues, which is one in how his cousin was involved with the student or the federation that he was involved with. And that's cited, too, by the board, and the judge mentions it in pages 71 to 72, which the board refers to. And initially he says the cousin started with the federation in 88, and then it isn't exactly clear as to when he helped the Sikhs in this case seek refuge outside of the country. I believe he says first it was in 94. Then he says, no, I met him in 94. It was actually 92. And then he mentions the date of February 8, 1995, which coincidentally actually is the date of his first arrest. So it kind of muddies the picture as it goes to his testimony because that date is something he refers to later on, what it's talked about in the context of when his cousin was involved with the federation or when he began his involvement with them. And also the- Counsel? Yes. Judge Hawkins on the phone. I'm looking at page 52 of the transcript. It's date stamped at the bottom, 000141. This is from the hearing. Your Honor, can I have a moment to grab that? Sure. Absolutely. That was page 52? Yes, sir. Do you have it? I'm getting to it. Yes, Your Honor. Yeah, I'm looking at starting at line 8, and this is his answer. Next day again they took off, had my clothes taken off, and they beat me. They were asking about the cousin, why he had come to your house, that there were- where are his contacts, and what did you do for him? And I told the police I have no connection with him, but the police were certain that I worked for him in Uttar Pradesh. Is that correct? Yes, I see that, Your Honor. Okay. And then over on page 53, line 8, they would verbally abuse me about helping Khalistan. See that? Yes, Your Honor. And then a little further down, they were convinced that I am the only one who helped the cousin. He's explaining why the father got released quickly and he didn't. Yes, Your Honor. You don't think that that's clear testimony about what happened to him and why it happened? Well, I don't believe that it compels the finding that that's exactly what happened to him, given the citations of the board to the other vagaries of his testimony. It would perhaps support an alternate conclusion, but, of course, this Court would have to be compelled to find, the record would have to compel the alternate finding in this case. So I certainly agree with Your Honor that it could support the conclusion that he was detained for that reason, but that is not the standard of review in this case. Well, is there any other evidence that he was detained for another reason? I don't believe there is, Your Honor. I can't think of anything offhand as to what the other reason may be. But, of course, this is the only thing that he testified to. And as far as the record goes, that's all that we have. Well, if he has a positive credibility finding and he states his ground and it is sufficient to support, why is it not compelling to support? Well, I think, Your Honor, I think that's the key issue in this case, is whether or not his – of course, they did not support the adverse credibility finding. The Board, though, does sort of fall short of stating that everything that was stated was credible in this case. It really comes down to the Board stating, I'm not or we're not sure exactly what to believe. It doesn't mean that his credibility is adverse, but it falls short of crediting everything that he states, because if you do that, you might have inconsistencies within the record or not the sufficient clarity as to what his claim really is. We look at two things. We look at whether his testimony is credible, and if that's determined, yes, he's credible. Then we look at what was in the record and whether it is sufficient to support a finding of persecution. And there's nothing here that I can see in the record that would do other than, number one, find him credible, and, number two, find that he was persecuted and that they thought he was helping his cousin. Well, Your Honor, respectfully, neither the IJ nor the Board found that he was persecuted or why he was persecuted, if that was the case. No, we look at that, looking at the record. I think the issue before the Court is whether or not the record – there's substantial evidence to support their finding that the testimony wasn't clear enough to support his case. And that really is the only issue before the Court. If the Court finds that certainly the record compels the finding that he did make out that claim, despite the Board's citation to the vagaries of the testimony, then this Court would, of course, have to remand back to the Board so that the Board can determine whether or not, A, he was persecuted, and, of course, whether or not that persecution was on account of a protected ground, and then whether it should be granted as a matter of discretion if those findings are made. Sort of a modified Ventura remand. I guess you could say that, Your Honor. It's something short of an adverse credibility finding, but in terms of the sufficiency of the evidence that was given, I guess the issue before this Court is whether or not the testimony that was given was sufficient or the record compels the finding that it was sufficient to support his burden of proof. The combination of the BIA's reversal of the adverse credibility determination and the law of this Circuit that once the testimony is determined to be credible, or even in the absence of the adverse determination, we assume the petitioner's testimony to be true. Right? That's correct, Your Honor. That is correct. Your point is that even if true, it's not sufficiently concrete and convincing to establish persecution. That's exactly right, Your Honor. But what about those portions which Judge Hawkins read to you from the transcript pages 141 and 142 where he is beaten for supporting Khalistan? Well, Your Honor, I think that, taken in conjunction, of course the Board didn't explicitly refer to that, and I can only speculate as to what their overall, how their finding fit into the grand picture of things of whether or not the testimony that he had, the things that he found vague, the Board found vague, I should say, in terms of whether or not his cousin was a militant which would bolster that claim, in conjunction with the fact that he testified that he was beaten and these things were said to him. The Board apparently found that those two things working together apparently still aren't enough to support his burden proof. I see my time has ended. If there are no further questions, thank the Court. Thank you, Counsel. Thank you. Your Honors, briefly, I think an important issue with respect to the remand is that the IJ did make findings on the issue of whether or not he suffered persecution on account of political opinion or imputed political opinion, if she would have found him credible. What is that? I would have to look at the transcript under, but we did cite that in our briefs. I can provide that for you. And also, the IJ proceeded to address the issue of changed country conditions, and she said that the evidence did not support a finding of changed country conditions. So I don't think a Ventura remand is appropriate in this case because the issue was addressed, it was addressed in the applicant's favor. The government's argument, as I understand it, is that if this panel cannot resolve any factual conflict between your client's specific testimony and the BIA's concerns about vagueness, that the appropriate appellate methodology would be to remand back to the BIA to resolve that. What's your position on that? If Your Honors can't distinguish between whether or not his testimony was too vague on these issues or not, if the court examines those issues and feels that it cannot resolve them, then I think remand would be the appropriate, then remand for clarification would be appropriate. I would have thought your response would have been that they had the opportunity to do that and didn't. I'm sorry, Your Honor, I think I'm not understanding your question. I would have thought your response to my question would have been that the BIA had the opportunity to do that, that is, resolve any conflict between vagueness and specific testimony, and they didn't. Well, Your Honor, my understanding was that if your question was if this Court thought that assuming the Board was correct about vagueness on those issues, whether this Court was not in a position to resolve those issues, whether or not remand would be appropriate. But our position is even assuming that the BIA believed that Mr. Singh's testimony was vague on those points, it is not relevant to the ultimate disposition in the case because the evidence that the BIA accepted is to establish that he suffered persecution on account of a protected ground. I understand your position. Thank you. Thank you, Your Honor. Thank you very much.
judges: B. Fletcher, Hawkins, Bea